```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                   CASE NUMBER 18-CR-20368-WMS

UNITED STATES OF AMERICA


     vs.

SERGIO LEMUS CARRATALA,

                         Defendant
_____

                     SENTENCING HELD 9-14-2018
             BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
                 UNITED STATES DISTRICT COURT JUDGE
_____

APPEARANCES:

FOR THE UNITED STATES:    CHRISTOPHER CLARK, A.U.S.A.
                          99 N.E. 4th Street
                          Miami, FL  33132


FOR THE DEFENDANT:        SANDY BENJAMIN BECHER, ESQ.
                          777 Brickell Avenue
                          Suite 708
                          Miami, FL 33131

REPORTED BY:              PATRICIA SANDERS, RPR
                          United States Court Reporter
                          400 North Miami Avenue, Suite 11-3
                          Miami, FL  33128
                          T: 305.523.5528
                          patricia_sanders@flsd.uscourts.gov.
```

```
11:01  1              THE COURTROOM DEPUTY: The Court calls Case No.
11:01  2   18-CR-20368-WMS, United States of America versus Sergio Lemus
11:01  3   Carratala.
11:01  4              Counsel, if you would please state your appearances
11:01  5   for the record.
11:01  6              MR. CLARK: Good morning, Your Honor, Christopher Clark
11:02  7   on behalf of the United States.  With me at counsel table is
11:02  8   Special Agent Charles Butcher with the FBI.
11:02  9              THE COURT:  Good morning, Mr. Clark; good morning
11:02 10   Special Agent Butcher.
11:02 11              MR. BECHER: Good morning, Your Honor, Sandy Becher on
11:02 12   behalf of Sergio Lemus Carratala who is standing to my right.
11:02 13              THE COURT:  Good morning, Mr. Becher; good morning,
11:02 14   Mr. Carratala.
11:02 15              And if I could have appearances by Probation, please.
11:02 16              MS. SYLVESTER PIERRE:  Good morning, Your Honor,
11:02 17   Danielle Sylvester Pierre on behalf of Probation.
11:02 18              THE COURT:  Good morning, Ms. Pierre.
11:02 19              Everyone may be seated. All right. We are here today
11:02 20   for sentencing in Mr. Carratala's case. I have received Mr.
11:02 21   Carratala's sentencing memorandum and his clarification slash
11:02 22   correction for the PSI, as well as the Government's motion.
11:02 23              I have the notice of exhibits and letters filed on
11:02 24   behalf of Mr.  Carratala, which I have reviewed.
11:02 25
```

| | | |
|---|---|---|
| 11:02 | 1 | But, Mr. Becher, let me start by asking have you |
| 11:03 | 2 | reviewed the PSI and its addendum in their entirety with your |
| 11:03 | 3 | client? |
| 11:03 | 4 | MR. BECHER: I have, Your Honor. |
| 11:03 | 5 | THE COURT: My understanding is the revised September |
| 11:03 | 6 | fourth presentence report addresses and clarifies all of the |
| 11:03 | 7 | edits in your motion in that regard; is that correct? |
| 11:03 | 8 | MR. BECHER:  That's correct, Your Honor. |
| 11:03 | 9 | THE COURT:  Are there any other factual edits or |
| 11:03 | 10 | matters that need to be addressed? |
| 11:03 | 11 | MR. BECHER: There are none, Your Honor. |
| 11:03 | 12 | THE COURT:  As to the guidelines and the criminal |
| 11:03 | 13 | history computation are there any challenges on behalf of Mr. |
| 11:03 | 14 | Carratala? |
| 11:03 | 15 | MR. BECHER: No, Your Honor. |
| 11:03 | 16 | THE COURT:  Mr. Clark, on behalf of the Government |
| 11:03 | 17 | any factual or guideline challenges to the presentence report? |
| 11:03 | 18 | MR. CLARK: No, Your Honor. |
| 11:03 | 19 | THE COURT:  The Court will then adopt with its thanks |
| 11:03 | 20 | to Probation the PSI in its entirety; which calculates a total |
| 11:03 | 21 | offense level 22, a Criminal History Category 1 and an advisory |
| 11:04 | 22 | guideline range of 41 to 51 months. |
| 11:04 | 23 | I am going to start with the Government, which I don't |
| 11:04 | 24 | ordinarily do, and then turn to the defense for their |
| 11:04 | 25 | presentation. |

11:04  1         So, Mr. Clark, if you would give the Court any
11:04  2    additional information you would like as regards your 5K motion
11:04  3    for Mr. Carratala's cooperation.
11:04  4         MR. CLARK: Yes, Your Honor. I will just amplify what I
11:04  5    set forth in my motion so as not to prolong this matter.
11:04  6         Due to the defense cooperation with the Government
11:04  7    sometime after his charges we were able to build our case.
11:04  8         Mr. Carratala agreed to meet with FBI agents to
11:04  9    disclose any and all information he had concerning other
11:05 10    persons involved in the various health care frauds.
11:05 11         As Your Honor will recall from the trial in which Mr.
11:05 12    Carratala testified he was an employee; he worked for Billing
11:05 13    USA. He was not a person who occupied a managerial role, nor
11:05 14    did he profit to a great extent from his work there.
11:05 15         So he immediately began cooperation and agreed to
11:05 16    plead guilty.  He agreed and did appear as a witness at Mr.
11:05 17    Rodriguez's trial.
11:05 18         Mr. Carratala met with me to prepare for his testimony
11:05 19    at trial and was always candid and forthcoming in all of our
11:05 20    meetings; and I believe he was a credible witness in the case.
11:05 21         Based on that, Your Honor, I have filed the motion and
11:05 22    am authorized to recommend a one third reduction from the
11:06 23    applicable guideline level.
11:06 24         THE COURT:  Let me ask you this; there are related
11:06 25    cases referenced in the PSI. There is one in front of Judge

```
11:06   1   Altonaga where persons affiliated with these activities
11:06   2   received sentences. It appeared that the Government had filed a
11:06   3   similar motion in that case.
11:06   4           MR. CLARK: Yes, Your Honor.
11:06   5           THE COURT:  Do you know; has anyone else testified in
11:06   6   a trial other than Mr. Carratala?
11:06   7           MR. CLARK: Your Honor, the Judge Altonaga case was --
11:06   8   were the three codefendants who ran the clinic that was the
11:06   9   subject of this indictment.
11:06  10           THE COURT:  Right.
11:06  11           MR. CLARK: And I filed a 5K1 based similarly on their
11:06  12   testimony in this case. And I recommended one third for each of
11:06  13   those three defendants and Judge Altonaga granted the motion as
11:06  14   to each of the three defendants.
11:07  15           With respect to Mr. Izquierdo -- who was the boss of
11:07  16   one of the billing companies -- she based her calculations on
11:07  17   the high end of the guidelines.
11:07  18           She gave Mr. Perez one third off from the lower end of
11:07  19   the guidelines.  And she went under by four months with respect
11:07  20   to Olga Alvarado because of her personal past and hardship.
11:07  21           THE COURT:  All right. And as to the restitution, is
11:07  22   there an agreed upon number?
11:07  23           MR. CLARK: Yes, Your Honor. We agreed to a figure in
11:07  24   the plea agreement.
11:07  25           THE COURT:  Was that the six hundred thousand dollar
```

```
11:08   1   figure--
11:08   2           MR. CLARK: Yes, Your Honor.
11:08   3           THE COURT:  The $653,893?
11:08   4           MR. CLARK: Yes, Your Honor.
11:08   5           THE COURT:  And that would be joint and several with
11:08   6   those persons in the other cases, Judge Huck, Judge Altonaga
11:08   7   and the Western District of Kentucky case?
11:08   8           MR. CLARK: Yes, Judge.
11:08   9           THE COURT:  All right.  Mr. Becher, you have heard the
11:08  10   Government's presentation so I will ask you for any additional
11:08  11   comments you may have on that motion as well as any 3553
11:08  12   arguments.
11:08  13           MR. BECHER: May it please the Court, counsel for the
11:08  14   Government, the special agent, and all of the wonderful people
11:09  15   here today who love and support Mr. Carratala.
11:09  16           I want to thank everyone thus far for the graciousness
11:09  17   and professionalism that they have afforded Mr. Carratala since
11:09  18   he was detained and then charged for this case.
11:09  19           And it is hard to believe but Mr. Carratala from the
11:09  20   moment I met him has looked forward to this day to be able to
11:09  21   come before Your Honor to express the deep remorse he has felt
11:09  22   from the very first moment.
11:09  23            And from the moment I met Mr. Carratala it was not
11:09  24   his own personal liberty that troubled him it was disappointing
11:09  25   so many of these same people that are in the courtroom here
```

```
11:09  1   today, having to look them in the eye and know he has let them
11:09  2   down.  And he also regrets that he has let this country down
11:09  3   which has opened its arms to him.
11:10  4          So, every since that moment he has done everything he
11:10  5   could do to try to make up for his mistakes and to try to show
11:10  6   that he is a positive contributor to the United States.
11:10  7          And to show that he is a positive influence to his
11:10  8   family and to all of those around him. And I believe he has
11:10  9   done so in an admirable fashion.
11:10  10         And, Your Honor, while we are very thankful for the
11:10  11  one third recommendation that Mr. Clark is authorized to make
11:10  12  to Your Honor in terms of reduction of his sentencing we would
11:10  13  be requesting more of a reduction.
11:10  14         We would ask that Your Honor consider under the
11:10  15  factors of 3553 -- ask that Your Honor consider the nature of
11:10  16  the offense, as well as the history and characteristics of this
11:10  17  personal defendant.
11:10  18         And in view of all of that, as well as the volumes of
11:10  19  heartfelt letters submitted on his behalf by many, many people
11:10  20  that know him intimately; we would ask that you take note of
11:11  21  that in terms of Mr. Carratala not being someone who is very
11:11  22  likely to re-offend.
11:11  23         He has had a lifelong commitment to hard work and
11:11  24  studies prior to this case, and since this case has occurred.
11:11  25
```

1  Your Honor had the opportunity to preside over the
2  trial where his testimony resulted in the conviction of one of
3  his codefendants who did not cooperate and subsequently went to
4  trial.
5  And as relates to the 3553 factors, I would argue this
6  is aberrant behavior on his part.  He is extremely remorseful
7  and has done everything he possibly can to try to right the
8  wrongs.
9  And again, Your Honor, given his personal history and
10 characteristics he would be highly unlikely to re-offend.
11 I believe that Your Honor is empowered to impose a
12 sentence that not only protects the public and acknowledges the
13 severity of the offense but would also take into account the
14 personal characteristics of this defendant.
15 THE COURT:  Let me ask you -- and I am not being glib
16 when I ask -- how am I to know that Mr. Carratala is unlikely
17 to recidivate?
18 I mean, he came to the U.S. the year this all started.
19 And while I know that he has tremendous family support, he
20 somehow found himself involved in this conspiracy.
21 So how is it he goes from coming here to find a better
22 life to engaging in this type of behavior?
23 MR. BECHER: That's a good question, Your Honor, and I
24 don't mean to be glib either; but I think it is something that
25 Mr. Carratala still asks himself.

11:13 1     I believe his conduct in this case is so unlike any of
11:13 2 his conduct before in his life -- it was conduct that many of
11:13 3 his friends and loved ones and employers that submitted letters
11:13 4 on his behalf -- and, Your Honor, these are employers from the
11:13 5 past where even though it was for a short period of time he
11:13 6 left such a compelling impact on them that they were willing to
11:14 7 write letters of support to a Federal Judge under these
11:14 8 circumstances.
11:14 9     He had a life of work and study and dedication to
11:14 10 family. So while he did fall into this situation, he has
11:14 11 accepted responsibility and cooperated with the Government in
11:14 12 any way that they asked of him.
11:14 13     THE COURT: And I do recall Mr. Carratala being a very
11:14 14 credible and good witness. How did he get involved in this? He
11:14 15 came here, he had family here -- apparently had a job or jobs
11:14 16 here.
11:14 17     The jobs he had seemed to be predominately in the
11:14 18 service and food industry, not Medicare. So, how did he get
11:14 19 involved; was it a friend, a family member, do we know?
11:15 20     MR. BECHER: I believe it was someone that -- and Mr.
11:15 21 Carratala will speak to Your Honor as well and make a brief
11:15 22 statement -- it is my understanding that he was approached by
11:15 23 someone while he was studying or at one of his jobs who offered
11:15 24 him a data entry position.
11:15 25     THE COURT: And that was someone he met where?

```
11:15   1              MR. BECHER: It was the codefendant, Francel Rodriguez,
11:15   2   who came to him with this opportunity to do data entry; and in
11:15   3   the process he ended up involved in this scheme.
11:15   4              THE COURT:  All right.
11:15   5              MR. BECHER:  And just by way of a little background
11:17   6   into his personal life; Mr. Carratala was recently married and
11:17   7   he has a three year old child with whom he is very involved.
11:17   8              Obviously we would like to limit the time that he is
11:17   9   incarcerated so he can resume being the leader of his family
11:17  10   and to be able to parent his three year old child and be a
11:17  11   positive husband and head of household.
11:17  12              All of this being said -- again we are thankful to the
11:17  13   Government for their recommendation -- we would respectfully
11:18  14   request given his testimony, as well as his substantial and
11:18  15   very valuable cooperation that led to the conviction of his
11:18  16   codefendant and his heartfelt sincerity in this matter, we
11:18  17   believe that a 50 percent reduction from the bottom of his
11:18  18   guidelines would be an appropriate sentence in this case.
11:18  19              THE COURT:  All right. Before I turn to Mr. Carratala
11:18  20   is there anything further the Government would like to say?
11:18  21              MR. CLARK: Briefly.  And just to allay Your Honor's
11:18  22   concerns in terms of recidivism; I do not believe that Mr.
11:18  23   Carratala is going to commit anything like this again.
11:18  24              He was a hard working individual who was working two
11:19  25   to three jobs to advance himself having arrived here from Cuba.
```

>                     He joined an existing conspiracy and was a participant
> and was not a driver of the engine of this conspiracy.
>                     Obviously the clinic owners made money, the owner of
> the billing company made money, the recruiters who recruited
> the patients made money; and this man made a salary.
>                     Certainly his conduct was instrumental in a large and
> very significant fraud that wreaked a lot of havoc and loss to
> private insurance companies. But he certainly was not the
> largest player in the scheme by any stretch.
>                     Thank you, Your Honor.
>                     THE COURT:  Thank you, Mr. Clark.
>                     Mr. Carratala, I am sure your attorney has talked to
> you and explained to you what would happen here today, and that
> you would have the opportunity to address the Court.
>                     You may take as long as you need. You can talk to your
> attorney before or any time during; but if you have something
> to share with the Court now would be the time.
>                     THE DEFENDANT:  Good morning, Your Honor. First of all
> I would like to express my gratitude for your allowing me to
> address you.
>                     I would like you to know, as well as the prosecutor
> Mr. Clark and the agent present here who are the most important
> representatives of this Government and of this country, how
> remorseful I am.

```
11:21  1              In 2013 I arrived in this country and this country
11:22  2  opened its arm to me and received me as one more individual
11:22  3  here.
11:22  4              I believe now that I have failed this country. That is
11:22  5  why I apologize to you because I am sorry for what I have done.
11:22  6  This country has opened its doors not only for me but for my
11:22  7  friends and family.
11:22  8              And with my actions I have failed not only my country
11:23  9  but I have also failed my family. I am not a person that does
11:23 10  evil.  I do believe that I committed a very bad mistake.
11:23 11              And so my first priority is to let you and my family
11:23 12  know that I have tried to make amends for this mistake that I
11:23 13  have made and made every effort to show that I have rectified
11:24 14  that mistake.
11:24 15              In this country I have worked hard to be able to get
11:24 16  ahead with my family. Now at this time I have all the strength
11:24 17  and the conviction to continue to work hard and do better.
11:24 18              And I apologize for the way that I have addressed you;
11:24 19  it is just that I get very emotional.
11:25 20              Thank you very much.
11:25 21              THE COURT:  Thank you, Mr. Carratala.  All right. Is
11:25 22  there anything further on behalf either the United States or
11:25 23  Mr. Carratala?
11:25 24              MR. BECHER: No, Your Honor; thank you.
11:25 25              MR. CLARK: No, Your Honor.
```

```
11:25  1         THE COURT:  The Court has considered the statements
11:25  2    and recommendations of the parties, the presentence report
11:25  3    which contains the advisory guidelines and the statutory
11:25  4    factors set forth in 18 United States Code 3553 A.
11:25  5         It is the finding of the Court that the defendant is
11:25  6    not able to pay a fine therefore no fine will be imposed.
11:25  7         Restitution, however, is mandatory and therefore will
11:25  8    be imposed in the agreed amount of $653,893.00; which is to be
11:25  9    paid jointly and severally with the co-conspirators in docket
11:25 10    16-20906-CR-Huck, 18-20043-CR-Altonaga and 17-00103-CR-RUSSELL
11:26 11         During the period of incarceration payment shall be
11:26 12    made as follows: If the defendant earns wages in a Federal
11:26 13    Prison UNICOR job then the defendant shall pay fifty percent of
11:26 14    those wages earned toward the financial obligations imposed by
11:26 15    this judgment.
11:26 16         If the defendant does not work in a UNICOR job he
11:26 17    shall pay $25 per quarter Upon release from incarceration
      18    defendant shall pay restitution at the rate of ten percent of
      19    his monthly gross earnings, until such time as the Court may
      20    alter that payment schedule in the interest of justice.
      21         U.S. Bureau of Prisons, U.S. Probation and the U.S.
      22    Attorney's Office shall monitor the payment of restitution and
      23    report to the Court any material change in the defendant's
      24    ability to pay.
      25
```

```
 1            The payments do not preclude the Government from using
 2   any other anticipated or unexpected financial gain, assets or
 3   income of defendant to satisfy restitution. Restitution shall
 4   be made payable to the Clerk of Court.
 5            First, I am going to grant the Government's motion to
 6   reduce Mr. Carratala's sentence based upon his cooperation in
 7   this case.
 8            I will note that this is a very serious crime, which
 9   Mr. Clark and others from his office have discussed what has
10   been phrased and described as an epidemic of Medicare fraud in
11   this community.
12            And it is so pervasive that it can touch even the most
13   recent arrival to the United States.
14            But balanced against the 3553 factors in this case;
15   the fact that Mr. Carratala who was a recent arrival to this
16   country was by all accounts living a hardworking and productive
17   life.
18            He was going to school, was trying to earn a wage,
19   working two jobs, and continues to have extraordinary family
20   support.
21            Mr. Carratala upon his arrest immediately reached out
22   to the Government to cooperate. And so while Mr. Carratala may
23   have failed the country and his friends he has done everything
24   in his power to try to remedy that situation.
25
```

```
11:28   1            Accordingly, it is the judgment of the Court that the
11:01   2   defendant Sergio Lemus Carratala is comitted to the Bureau of
11:28   3   Prisons to be imprisoned for a term of 20 months as to Count 1.
11:28   4            Upon release from imprisonment defendant shall be
11:28   5   placed on supervised release for a term of three years.
11:28   6            Within 72 hours of release defendant shall report in
11:28   7   person to the Probation Office in the district where he is
11:28   8   released.
11:28   9            While on supervised release the defendant shall comply
        10   with mandatory and standard conditions of supervised release;
        11   including not committing any crimes, being prohibited from
        12   possessing a firearm or other dangerous device or weapon, not
        13   unlawfully possessing a controlled substance, cooperation in
        14   the collection of DNA.
        15            The defendant shall also comply with the following
11:28  16   special conditions: Financial disclosure requirement, no new
11:29  17   debt, self employment restriction, related concern restriction
11:29  18   and permissible search as noted in Part G of the presentence
11:29  19   report.
11:29  20            He must also cooperate with Immigration should there
11:29  21   be any attendant proceedings in that regard.
11:29  22            The defendant shall also immediately pay to the United
11:29  23   States a special assessment of $100.
11:29  24            Total sentence 20 months imprisonment, three years
11:29  25   supervised release $653,893 in restitution and a $100 special
```

```
11:29  1   assessment. It is further ordered that defendant's right, title
11:29  2   and interest in certain property consistent with the plea
11:29  3   agreement is hereby forfeited.
11:29  4              The United States shall submit a proposed order of
11:29  5   forfeiture, if it has not already done so.
11:29  6              MR. CLARK: Your Honor, we have; at docket entry 70.
11:29  7   So we would ask you incorporate that into the judgment and
11:29  8   commitment.
11:29  9              THE COURT:  That will be incorporated.
11:29 10              MR. CLARK:  Thank you, Your Honor.
11:29 11              THE COURT:  Now that sentence has been imposed, does
11:29 12   the defendant or counsel object to the Court's findings of fact
11:30 13   or the manner in which sentence was pronounced?
11:30 14              MR. BECHER: No, Your Honor.
11:30 15              THE COURT:  Mr. Carratala, you have the right to
11:30 16   appeal the sentence.  Any notice must be filed within 14 days
11:30 17   after the entry of judgment.
11:30 18              If you cannot afford to pay for the appeal you may
11:30 19   apply for leave to appeal in forma pauperis; Meaning the Court
11:30 20   will appoint an attorney to represent you.
      21                       SENTENCING CONCLUDED
      22
      23
      24
      25
```

```
 1                         -  -  -

 2                       C E R T I F I C A T E

 3          I hereby certify that the foregoing is an accurate

 4   transcription of proceedings in the above-entitled matter.

 5

 6                                          /S/PATRICIA SANDERS

 7   _____                      _____

 8   DATE FILED                      PATRICIA SANDERS, RPR
```